UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rosalyn Wyles,

     Plaintiff,

v.

Excalibur I, LLC,

     Defendant.

Civil No. 05-2798 (JRT-JJG)

REPORT
AND
RECOMMENDATION

JEANNE J. GRAHAM, United States Magistrate Judge

This matter came to the undersigned for a hearing on April 13, 2006. Defendant Excalibur I (Excalibur) moves to dismiss (Doc. No. 7). Mark H. Thieroff, Esq., and Wood R. Foster, Jr., Esq., appeared on behalf of plaintiff Rosalyn Wyles (Wyles). Kevin P. Hickey, Esq., appeared on behalf of Excalibur. The motion is assigned to this Court for a Report and Recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

I.  BACKGROUND

This dispute arises out of the collection of a credit card debt. Wyles acquired approximately $13,000 in credit card debt and defaulted in 2001. Chase charged off the debt in 2002 and, at some point thereafter, sold the debt to Excalibur.

Excalibur brought action to collect the debt, in a Minnesota state district court, in May 2004. In addition to the debt itself, Excalibur also sought interest and attorney fees. Because Wyles did not appear, the state district court issued a default judgment in June 2005. The total judgment was approximately $17,000, with interest and attorney fees. After receiving the judgment, Excalibur levied Wyles' bank

account. Wyles reached a settlement with Excalibur in November 2005, paying $9,500 to fully discharge the judgment.

Wyles initiated her current action in December 2005, claiming that Excalibur violated the Fair Debt Collection Practices Act (FDCPA). She alleged that Excalibur was not entitled to collect interest or attorney fees with her debt. Excalibur now moves to dismiss. It argues that federal courts lack subject matter jurisdiction under the *Rooker-Feldman* doctrine, or in the alternative, that action is barred under the applicable statute of limitations.

## II.    DISCUSSION

When a court considers a motion to dismiss for lack of subject matter jurisdiction, its decision shall be based on undisputed facts. *Harris v. P.A.M. Transport, Inc.*, 339 F.3d 635 (8th Cir. 2003). When a court considers a motion to dismiss for failure to state a claim, the court ordinarily examines only those matters in the pleadings, with all reasonable inferences taken in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004); *see also Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1068-69 (8th Cir. 2004) (applying dismissal standard when evaluating whether proposed amendments were barred by a statute of limitations). Dismissal is appropriate when the plaintiff fails to allege facts that support a cause of action as a matter of law. *Bohan v. Honeywell Int'l, Inc.*, 366 F.3d 606, 608 (8th Cir. 2004).

### A.    *Rooker-Feldman*

The *Rooker-Feldman* doctrine provides that, because the U.S. Supreme Court is the only federal court authorized to review state court judgments, inferior federal courts lack subject matter jurisdiction to do so. *See* 28 U.S.C. § 1257. The name of the doctrine is taken from the two U.S. Supreme Court

decisions that, until recently, were the only cases where the Court had examined the issue. The more recent

of the two, *District Columbia Court of Appeals v. Feldman*, concluded that a federal court could not

review a state court judgment because the two matters were "inextricably intertwined." 460 U.S. 462, 486

(1983).

The Eighth Circuit subsequently focused on this language when applying the *Rooker-Feldman*

doctrine. Relying on dicta from a concurring opinion by Justice Marshall in *Pennzoil Co. v. Texaco, Inc.*,

the Eighth Circuit defined the "inextricably intertwined" standard by inquiring "if the federal claim succeeds

only to the extent that the state court wrongly decided the issue before it." 481 U.S. 1, 25 (1987)

(Marshall, J., concurring). This language was read expansively, to include situations where a federal court

action "would effectively reverse the state court decision or void its holding." *In re Hoffinger Indus., Inc.*,

329 F.3d 948, 951 (8th Cir. 2003). Excalibur urges that this analysis be applied in its motion to dismiss.

The U.S. Supreme Court recently revisited the *Rooker-Feldman* doctrine in *Exxon Mobil Corp.*

*v. Saudi Basic Industries Corp.* 125 S.Ct. 1517 (2005). The Court implicitly criticized inferior federal

courts for improperly expanding the scope of the doctrine. *Id.* at 1521. Instead the Court emphasized,

> The *Rooker-Feldman* doctrine . . . is confined to cases of the kind from
> which the doctrine acquired its name: cases brought by state-court losers
> complaining of injuries from state-court judgments rendered before the
> [federal] district court proceedings commenced and inviting review and
> rejection of those judgments. [It] does not otherwise override or supplant
> preclusion doctrine . . . .

*Id.* at 1521-22. Warning against conflating principles of preclusion with the *Rooker-Feldman* doctrine,

the Court added,

> If a federal plaintiff "present[s] some independent claim, albeit one that
> denies a legal conclusion that a state court has reached in a case to which

3

> he is a party . . . ., then there is jurisdiction and state law determines
> whether the defendant prevails under principles of preclusion."

*Id.* at 1527 (quoting *Gash Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

*Exxon* has caused federal authorities to reexamine the "inextricably intertwined" standard. Some note that the phrase "inextricably intertwined," as it originally appears in *Feldman*, was only employed to describe a legal conclusion, rather than to supply a discrete analysis. *See Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 86 (2d Cir. 2005); Thomas D. Rowe, Jr. & Edward L. Baskauskas, *"Inextricably Intertwined" Explicable at Last?*, Duke Law School Working Paper Series No. 36 (2006), *available at* http://lsr.nellco.org/cgi/viewcontent.cgi?article=1036&context=duke/fs (last checked Apr. 26, 2006). Nevertheless it is reasonable to observe that, to the extent that a prior state judgment prevents federal litigation, the claims may be described as "inextricably intertwined" with one another.

But the contours of the doctrine are otherwise plainly set out in *Exxon*. To determine whether a federal court has subject matter jurisdiction, the relevant questions are whether there is a final state court judgment; whether the plaintiff complains of an injury from that judgment; and whether the plaintiff invites review or rejection of the judgment. If an independent federal claim will not disturb a state court judgment, then that claim may go forward, even though the federal court may reach a legal conclusion contrary to one underlying the state court judgment.

Since *Exxon*, two cases have considered the applicability of the *Rooker-Feldman* doctrine to circumstances like those in this case, where creditors obtain a judgment in state court but have their

collection practices challenged in federal court.[1]  These courts reason that, when a debtor brings action under the FDCPA, the action does not complain of the state court judgment itself.  Instead it challenges the debt collection practices that led to the judgment.  And the debtor may prevail without inviting review of the state court judgment.  Thus action under the FDCPA is not barred by the *Rooker-Feldman* doctrine. *Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 435-36 (6th Cir. 2006); *Senftle v. Landau*, 390 F.Supp.2d 463, 468-69 (D.Md. 2005).

This analysis is consistent with the result in *Feldman*.  The Court distinguished between an action that seeks review of a state court judgment and one that challenges the law underlying that judgment.  Thus the applicants could not reverse the denial of their applications to the bar, but they were allowed to litigate the constitutionality of the rule underlying the decision.  A similar situation occurs here.  Wyles does not seek review of a state court judgment, but through the FDCPA, she may challenge the law that Excalibur advanced in the state court proceedings.

---

[1] In the supplemental memorandum supporting its motion, Excalibur cites a post-*Exxon* decision from the Northern District of Illinois, *Byrd v. Homecomings Financial Network*, for the proposition that the *Rooker-Feldman* doctrine consistently bars litigation of claims under the FDCPA. 407 F.Supp.2d 937 (N.D.Ill. 2005).  This case involves a plaintiff who, after a foreclosure sale of her residence, sought to reverse the foreclosure because it violated the FDCPA.

The court held that, because this action was a challenge to the foreclosure decree, it was barred by the *Rooker-Feldman* doctrine.  *Id.* at 943-44.  This ruling is consistent with *Exxon*, since it involves circumstances where a plaintiff sought to reverse the foreclosure.  Conversely the court did not disclose whether, as here, the creditor had engaged in illegal debt collection practices.  So it is unclear whether *Byrd* offers meaningful guidance.

The court also suggests that, when determining whether a federal claim is precluded by the *Rooker-Feldman* doctrine, a relevant factor is whether the plaintiff had the opportunity to raise the claim before the state district court.  *Id.* at 943.  This reasoning is not supported by *Exxon* and the court does not cite any authorities that directly support this proposition.  Because *Byrd* departs from the analysis employed by *Exxon* and its progeny, it is not reasonable to give it precedential weight here.

Wyles principally asserts that Excalibur improperly demanded interest and attorney fees when it reduced her debt to judgment. Because the state district court awarded this interest and attorney fees, Excalibur argues, a federal court necessarily will be required to review and reject the state court judgment. But *Exxon* anticipates and rejects this argument. Instead the Court acknowledges federal jurisdiction for a plaintiff who "presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he is a party." Thus the potential for contrary rulings between state and federal courts does not, by itself, preclude subject matter jurisdiction.

Excalibur also argues that, should Wyles prevail on her federal claim, she would negate the remedy it obtained in its state court judgment. But no matter the outcome here, there is no legal means by which a federal court could modify or reject the prior state court judgment. Put another way, such a "de facto reversal" is not equivalent to de jure reversal of the state court judgment. Consequently this outcome does not implicate the *Rooker-Feldman* doctrine.

Here, Wyles does not complain of a state court judgment, but instead challenges the conduct of Excalibur in seeking the judgment. And a federal court may rule upon this issue without review or rejection of a prior state court judgment. Accordingly, Wyles' action under the FDCPA is not barred by the *Rooker-Feldman* doctrine, and it is not appropriate to grant the motion to dismiss on this basis.

**B.      Statute of Limitations**

Excalibur also argues that Wyles' action is barred by the statute of limitations, which requires the action to proceed within one year from the date of the violation. It contends that its purported violation occurred when it commenced its action to collect the debt in state court, more than eighteen months before her action here. Wyles counters that the violation occurred when Excalibur obtained its state court

6

judgment, six months before her action; or when she settled that judgment, one month before her action.

The statute of limitations for the FDCPA is 15 U.S.C. § 1692k(d), which provides in relevant part,

> An action to enforce liability created by this subchapter may be brought
> . . . within one year from the date on which the violation occurs.

The leading case for determining "the date on which the violation occurs" is an Eighth Circuit decision, *Mattson v. U.S. West Communications*, 967 F.2d 259 (8th Cir. 1992). The case involved a dunning letter that allegedly violated the FDCPA, and the issue was whether the violation occurred when the creditor mailed the letter or when the debtor received it.

The court concluded that the violation occurred when the letter was mailed. In support of this ruling, the court reasoned that mailing was the last opportunity for the creditor to cure the violation, and that mailing would fix the date of violation "by objective and visible standards." *Id.* at 260. Subsequent cases have relied on these two factors to determine "the date when the violation occurs." *See, e.g., Johnson v. Riddle*, 305 F.3d 1107, 1114 n. 4 (10th Cir. 2002); *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997).

For a violation in connection with litigation to reduce a debt to judgment, most federal authorities conclude that the violation occurs when the collection action begins. Thus where the creditor misrepresents relevant law or facts, as Wyles has alleged here, the violation is fixed to the complaint. *Rosado v. Taylor*, 324 F.Supp.2d 917, 921-22 (N.D.Ind. 2004) (general misrepresentations); *In re Lord*, 270 B.R. 787, 796-97 (Bankr. M.D.Ga. 1998) (time-barred debt); *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 393 (D.Del. 1991) (wrong party); *Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480, 1487 (M.D.Ala. 1987) (time-barred debt).

The few authorities to the contrary do not involve comparable circumstances. *See Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F.Supp.2d 471, 475 (D.Md. 2004) (summarily concluding that, when action under FDCPA commenced three years after a debt was reduced to judgment, action was barred by statute of limitations); *Campos v. Brookbank*, 120 F.Supp.2d 1271, 1273-74 (D.N.M. 2000) (holding that, when creditor engaged in harassment during litigation, there was a continuing violation throughout litigation). Although there is variation about when the violation occurs, the key event is the initial pleading and not the final judgment. *See Prade v. Jackson & Kelly*, 941 F.Supp. 596, 598-99 (N.D.W.Va. 1996) (implying that violations ended upon commencement of action); *Blakemore v. Pekay*, 395 F.Supp. 972, 982-83 (N.D.Ill. 1995) (holding that violation occurred when creditor filed application for writ of garnishment).

By focusing on the initial pleading, these authorities implicitly or expressly rely on the first *Mattson* factor. As a practical matter, if a creditor proceeds with litigation that misrepresents the applicable law or facts, then the commencement of litigation is the last opportunity that the creditor has to avoid the violation. *See Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001); *Rosado*, 324 F.Supp.2d at 927-28.

Similar reasoning is used by the appellate courts that have considered the issue. The Ninth Circuit, in *Naas v. Stolman*, summarily rejected the notion that the violation occurs when judgment is entered. Instead it held that the violation occurred when a complaint, with a misrepresentation, was filed in the state district court. 130 F.3d 892, 893 (9th Cir. 1997). The Eighth Circuit reached a comparable result in *Freyermuth v. Credit Bureau Services, Inc.*, concluding that when action is brought to recover a time-barred debt, the violation occurs "on the threat, or actual filing, of litigation." 248 F.3d 767, 771 (8th Cir.

8

2001).

Closest to the instant case is the decision of the Tenth Circuit in *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002). In that case the debtor alleged that, in both dunning letters and the complaint, the creditor demanded an illegal fee. The court held that when a violation arises out of a prior debt collection action, "no violation occurs . . . until the plaintiff has been served" with the complaint. *Id.* at 1113.

Taken together, a preponderance of authorities states that when a creditor improperly applies the law in a collection action, the violation occurs when the litigation begins. This rule is consistent with the *Mattson* factors. Once a creditor has advanced a position in litigation, the opportunity to cure the violation has passed. And commencement of litigation is a clear and certain commitment by the creditor. If the violation were connected to other pleadings or the judgment, then there would be greater uncertainty about when the violation has occurred.

Wyles asserts that, when determining the time of the violation, a court is required to distinguish between misleading representations under 15 U.S.C. § 1692e and unfair practices under 15 U.S.C. § 1692f. The first provision bars "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The latter bars "unfair or unconscionable means to collect or attempt to collect any debt." Wyles contends that the case law, which dates the violation to the complaint, only involves misrepresentations under § 1692e. She then argues that the phrase "collect or attempt to collect," under § 1692f, will date the violation to any court proceedings in a collection action. But these arguments are problematic for several reasons.

First, of the cases that date the violation to the commencement of litigation, many involve unfair practices under § 1692f. *See, e.g., Freyermuth*, 248 F.3d at 770-71; *Johnson*, 305 F.3d at 1117-18.

9

Wyles has not cited any authorities that suggest different methods for determining the date of violation under § 1692e and § 1692f.

Second, her proposed definition for "collect or attempt to collect" would allow the violation to be fixed to the date of a state court judgment. This argument attaches the violation to the actions of a court rather than the improper actions of a creditor. So her proposed rule also contravenes the notion, in the first *Mattson* factor, that the creditor should have the opportunity to avoid the violation. *See Mattson*, 967 F.2d at 260.

Wyles argues, in the alternative, that a violation occurred when she and Excalibur executed a settlement agreement discharging the state court judgment. She alleges that, because counsel for Excalibur received a portion of the settlement proceeds, Excalibur illegally obtained attorney fees. However, these allegations are not disclosed in or supported by the complaint. When all reasonable inferences are taken in Wyles' favor, *Crumpley-Patterson*, 388 F.3d at 590, the complaint only indicates that a portion of the settlement proceeds were later paid to counsel for Excalibur. It does not state that Excalibur demanded attorney fees or that Wyles paid them. And the settlement agreement itself is not attached to the complaint. Thus Wyles has not established that a violation occurred within the time allowed under the statute of limitations.

According to its statute of limitations, the FDCPA bars action more than one year after the date of the violation. Wyles alleges that Excalibur improperly demanded interest and attorney fees when it brought action in state court to reduce her debt to judgment. This violation is properly dated to when Excalibur commenced the state court litigation, eighteen months before Wyles' action here. Thus her action is time-barred, and it is appropriate to grant Excalibur's motion to dismiss on this basis.

## III.    CONCLUSION

This Court concludes that it may appropriately exercise subject matter jurisdiction without violating the *Rooker-Feldman* doctrine.  But it further concludes that this action has not been timely filed in accordance with the applicable statute of limitations.  This Court recommends, therefore, that Excalibur's motion to dismiss be granted.

## IV.    RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.    Excalibur's motion to dismiss (Doc. No. 7) be **GRANTED.**

2.    This matter be **DISMISSED WITH PREJUDICE.**

Dated this 28th day of April, 2006.                          s/Jeanne J. Graham

                                                                JEANNE J. GRAHAM
                                                                United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by May 17, 2006.  A party may respond to the objections within ten days after service.  Any objections or responses filed under this rule shall not exceed 3,500 words.  A District Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.